OPINION OF THE COURT
Renee R. Roth, S.
This is an application under the recently enacted "trust splitting” statute, EPTL 7-1.13 (L 1995, ch 523, eff Aug. 2, 1995), to sever a revocable trust established in 1983 by decedent Anna M. Schlesinger for her life income benefit.
We turn first to the new statute which authorizes trust splitting by three different methods, namely, by the fiduciary without court approval or the consent of the beneficiaries; by the fiduciary with the consent of the interested parties; by the court. Before EPTL 7-1.13 was enacted, a trust could not be *939 split without court approval. Although our Surrogate’s Courts reformed wills and trusts to obtain various tax benefits (Matter of Choate, 141 Misc 2d 489 [generation-skipping transfer tax (GST) exemption]; Matter of Kaskel, 146 Misc 2d 278 [GST grandfathering]; Matter of Nossiter, 146 Misc 2d 879 [GST exemption]; Matter of Martin, 146 Misc 2d 144 [qualified terminable interest property (Q-TIP) requirements]; Matter of Romita, 134 Misc 2d 410 [subchapter S requirements]; Matter of Heller, 161 Misc 2d 369 [minimize liability on real property]), there was a concern that the Internal Revenue Service, under Commissioner v Estate of Bosch (387 US 456), would not be bound by the decisions because they were not rendered by the State’s highest Court or pursuant to a State statute (see, Legis Mem in Support of L 1995, ch 523, 1995 McKinney’s Session Laws of NY, at 2221, 2224; see also, Fraiman, Trust Splitting Under the New Statute, NYLJ, Nov. 20, 1995, at 1, col 1). This uncertainty is eliminated by the new legislation which authorizes a trustee or executor, unless prohibited by the disposing instrument, to establish two or more trusts without court approval or the consent of the beneficiaries for the following tax purposes: to separate qualified terminable interest property (Q-TIP) or property held in a qualified domestic trust (Q-DOT) for purposes of the marital deduction; to effectuate a marital deduction by segregating the interests of others; to effectuate a charitable deduction by segregating the interests of others; to obtain exemption from the generation-skipping transfer (GST) tax; to establish qualified subchapter S trusts for single beneficiaries; to segregate property transferred in trust by different creators; to segregate property transferred in trust by the same creator under other instruments.
In addition, trusts may be split by the trustee for any reason not contrary to the primary purpose of the trust upon the consent of all persons interested in the trust (EPTL 7-1.13 [a] [2]) or by the court in a proceeding on notice to all such persons (EPTL 7-1.13 [a] [3]). The term "all persons interested” is defined as those who would have to be joined in a proceeding to settle the trustee’s account, taking into consideration virtual representation under SCPA 315 (EPTL 7-1.13 [h]). The statute further provides that, with certain limited exceptions, court approval is required where the proposed separate trusts are not each funded with property fairly representative of the appreciation and depreciation at the fair market value of the assets on distribution or if the trustee is to receive additional commissions following the split (EPTL 7-1.13 [d], [j]).
*940 With this statement of the new law, we turn now to the trustee’s application. It is observed initially that, although the primary purpose of the severance, in the instant case, is to reduce commissions, the proposed allocation of the original trust assets into separate trusts is not equal. Under her will admitted to probate by this court on July 25, 1995, Mrs. Schlesinger directed that her net estate be "poured over” into a revocable inter vivos trust she had created in 1983. The executors of decedent’s will are her two sons; the trustees of the trust are the sons and a bank. The principal asset of testatrix’ testamentary estate is her cooperative apartment valued at approximately $540,000. Before the pour over, the assets of the trust fund consisted of securities and cash valued at $995,000.
The trust instrument provides that upon the death of Mrs. Schlesinger the trust fund is to be divided into two trusts, both for the benefit of her husband. Trust A is a marital trust in the amount of the unused portion of decedent’s $1,000,000 exemption from generation-skipping transfer tax with continuing trusts, on the husband’s death, for the sons and then for their issue. Trust B is to be funded with the balance of the inter vivos trust.
After payment of administration expenses, the remaining securities and cash will be insufficient to fully fund Trust A thus necessitating the addition of a fractional interest in the cooperative apartment to that trust. The remaining fractional interest of the apartment will fund Trust B.
Petitioner, one of the trustees, seeks approval for the division of Trust A into two trusts, "A” and "A-l”, so that the fractional interest in the apartment otherwise allocable to Trust A can be held in Trust A-l. After such split, the bank will renounce as a trustee of Trust A-l and Trust B and the sons will renounce their commissions in these trusts, thereby reducing the cost of administration. Identical trust terms will govern Trusts A and A-l. Court approval is required, as mentioned above, because of the non-pro rata allocation of assets between the trusts (EPTL 7-1.13 [d]).
All the trustees and all the adult persons interested in these trusts, namely, the grantor’s spouse, her sons and their adult issue, have consented to this application. However, some of the grandchildren and the great grandchildren interested in these trusts are infants. It is clear that, in this proceeding, the infant grandchildren are adequately represented by the sons, who are the secondary income beneficiaries and have the same interests *941 (Matter of Adler, 77 Misc 2d 651; Matter of Sunderhauf, NYLJ, Aug. 2, 1978, at 11, col 2). Moreover, the governing instrument expressly permits lateral representation, which authorizes the representation of the infants by the adult grandchildren, who have all consented and have identical interests (SCPA 315 [5]). There is no doubt that the effect on all the persons interested is the same in that they all benefit from the reduction in trustees’ commissions, which is the purpose of the split. In all other ways, the parties’ interests will remain unchanged by the proposed split of Trust A.
Although the legislative intent in enacting EPTL 7-1.13 was to provide an effective method of obtaining various tax benefits, the new statute does not appear to be restricted to that purpose. After stating the various tax-related purposes, which could serve as the basis for a trust split, the statute in several paragraphs indicates that a trust may also be divided for "any reason not directly contrary to the primary purpose of the trust” (EPTL 7-1.13 [a] [2], [3]). Reducing administration expenses is clearly a reasonable purpose. Since the parties’ interests will remain unchanged by the proposed split and its purpose is appropriate, the application is granted.